# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CAJUNLAND PIZZA, LLC, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 19-10366** |
| **MARCO'S FRANCHISING, LLC, et al.** | **SECTION: "G"(3)** |

## ORDER AND REASONS

Before the Court is Defendants Marco's Franchising, LLC ("Marco's Franchising"),
Marco's Pizza Holdings, LLC ("Marco's Pizza Holdings"), and Tony Libardi's ("Libardi")
(collectively, "Defendants") "Motion to Transfer Actions Under U.S.C. § 1404 or to Dismiss for
Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief May be
Granted."[1] In the Motion, Defendants request that this Court transfer this action to the United
States District Court for the Northern District of Ohio, in accord with the forum selection clauses
agreed to by the parties.[2] Having considered the motion, the memoranda in support and in
opposition, the record, and the applicable law, the Court grants Defendant's motion in part and
transfers this case to the Northern District of Ohio.

## I. Background

On May 14, 2019, Plaintiffs, CajunLand Pizza, LLC ("CajunLand Pizza"), Ole Tyme
Pizza, LLC ("Ole Tyme Pizza"), Crescent City Pizza, LLC ("Crescent City Pizza"), Partners
Pizza, LLC ("Partners Pizza"), SELA PIZZA No 1 LLC ("SELA No. 1"), and SELA PIZZA No

---

[1] Rec. Doc. 13.

[2] *Id*. at 1. In the alternative, Defendants argue this action should be dismissed for lack of subject matter
jurisdiction because the Complaint fails to plead "complete diversity." *Id*. Lastly, and in the alternative, Defendants
argue that Counts I and II of the Complaint should be dismissed for failure to state a claim upon which relief may be
granted. *Id*.

2, LLC ("SELA No. 2") (collectively, "Plaintiffs") filed a Complaint in this Court naming as Defendants Marco's Franchising, LLC ("Marco's Franchising"), Marco's Pizza Holdings, LLC ("Marco's Pizza Holdings"), and Tony Libardi ("Libardi") (collectively, "Defendants").[3] Plaintiffs bring claims against Defendants for compensatory damages, restitution, costs of suit, attorney's fees, and declaratory judgment.[4]

According to the Complaint, Marco's Franchising is a pizza franchising operation that sells Marco's Pizza franchises.[5] Plaintiffs allege that on December 10, 2009, CajunLand Pizza and Defendant Marco's Franchising entered into an "Area Representative Agreement," which obligates purchasers to develop and service multiple franchise stores within a designated area.[6] By the end of 2010, CajunLand Pizza opened two stores, both of which it owned (SELA No. 1 and SELA No. 2), and eventually opened and developed a total of six stores.[7] Plaintiffs allege that in January of 2016 Marco's Franchising terminated the Area Representative Agreement with CajunLand Pizza.[8]

Plaintiffs allege that after several years of operations, Plaintiffs expressed their desire to sell their stores to a franchisee in Florida named Ketan Desai ("Desai").[9] Plaintiffs allege that on November 3, 2017, Marco's Franchising issued its written approval of the purchase to both the

---

[3] Rec. Doc. 1.

[4] *Id*. at 1.

[5] *Id*. at 4.

[6] *Id*. at 5, 8.

[7] *Id*. at 8, 12.

[8] *Id*. at 13.

[9] *Id*. at 14.

buyer and the sellers.[10] However, Plaintiffs allege that Marco's Franchising later requested that Plaintiffs transact with different buyers, Dan Cook ("Cook") and Travis Worley ("Worley").[11] Plaintiffs allege that Cook's offer to purchase the same stores was 40% lower than the sale price offered by Desai, and thus unacceptable to Plaintiffs.[12] According to the Complaint, less than a week before the scheduled closing, on May 16, 2018, Marco's Franchising advised Plaintiffs that they were withdrawing their earlier written consent and stopping the transaction.[13]

Plaintiffs allege that this reversal left them in a difficult position.[14] Plaintiffs allege that on June 1, 2018, Marco's Franchising closed the location owned by Plaintiff Partner's Pizza, citing health and safety concerns.[15] Plaintiffs allege that Ole Tyme Pizza similarly closed and sold its equipment.[16] Plaintiffs allege that SELA No. 2 closed its doors on July 15, 2018.[17] According to Plaintiffs, in November 2018, Crescent City Pizza sold its franchise for one quarter of the price it would have received if the sale to Desai had been permitted to close.[18] Plaintiffs allege that on December 26, 2018, SELA No. 2 was informed that its franchise was terminated.[19] Accordingly, Plaintiffs bring claims against Defendants under the Louisiana Unfair Trade Practices Act

---

[10] *Id.*

[11] *Id.* at 15.

[12] *Id.*

[13] *Id.* at 16.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 18.

[17] *Id.* at 19.

[18] *Id.*

[19] *Id.* at 20.

("LUTPA") and for tortious interference of a contract.[20]

Defendants filed the instant motion on July 24, 2019.[21] On August 7, 2019, the Court granted Plaintiff's "Exparte Unopposed Motion to Change the Submission Date from August 28, 2019 to September 11, 2019."[22] Plaintiffs filed an opposition on September 3, 2019.[23] Defendants, with leave of Court, filed a reply in further support of the motion on September 16, 2019.[24]

On January 17, 2020, the Court found that Plaintiffs did not properly plead complete diversity in the Complaint.[25] In particular, Plaintiffs failed to adequately plead the citizenship of the Plaintiff limited liability companies.[26] Rather than grant the motion to dismiss, the Court allowed Plaintiffs the opportunity to proffer additional evidence as to the citizenship of the parties.[27] On January 27, 2020, Plaintiffs filed a "Factual Support for Diversity Jurisdiction."[28] In the filing, Plaintiffs stated that there is complete diversity because the members of each Plaintiff limited liability company is a citizen of Louisiana.[29] In support, Plaintiff attached an affidavit executed by Scott Escarra ("Escarra"), Chairman of the Board of CajunLand Pizza, who states that each of the individual members of each Plaintiff LLC are citizens of Louisiana.[30]

---

[20] *Id*. at 23-28.

[21] Rec. Doc. 13.

[22] Rec. Doc. 20.

[23] Rec. Doc. 22.

[24] Rec. Doc. 28.

[25] Rec. Doc. 35.

[26] *Id*.

[27] *Id*.

[28] Rec. Doc. 36.

[29] *Id*. at 1.

[30] Rec. Doc. 36-1.

Defendants had previously provided a declaration of Ashley Weis ("Weis"), the Director of Legal Services for Defendants to show their citizenship.[31] Weis states that Marco's Franchising, LLC's only member is Marco's Pizza Holdings, LLC.[32] Weis attests that there are 62 members of Marco's Pizza Holdings, including 25 individuals, six corporations, six limited liability companies, one limited partnership, and 24 trusts.[33] Weis states that Marco's Pizza Holdings is a citizen of at least 14 different states, namely: Alabama; California; Florida; Illinois; Indiana; Kentucky; Michigan; New Jersey; Ohio; Rhode Island; South Carolina; South Dakota; Texas; and Utah.[34] Finally, Defendants assert that Defendant Libardi is a citizen of Florida for diversity purposes.[35]

Based on the submissions of the parties, the Court is satisfied that it has subject matter jurisdiction over the case. Every member of each Plaintiff LLC is a citizen of Louisiana.[36] Marco's Pizza Holdings is a citizen of at least 14 different states, namely: Alabama; California; Florida; Illinois; Indiana; Kentucky; Michigan; New Jersey; Ohio; Rhode Island; South Carolina; South Dakota; Texas; and Utah.[37] Accordingly, the Court is satisfied that complete diversity exists between the parties.

---

[31] Rec. Doc. 13-1 at 16-17.

[32] Rec. Doc. 13-9 at 1.

[33] *Id.* at 2.

[34] *Id.* at 3.

[35] Rec. Doc. 13-1 at 17, n.75.

[36] Rec. Doc. 36.

[37] Rec. Doc. 13-9 at 3.

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support of the Motion*

In the instant motion, Defendants contend that pursuant to the mandatory forum selection clauses Plaintiffs signed, this action should be transferred under 28 U.S.C. § 1404 to the Northern District of Ohio.[38] Defendants contend that all Plaintiffs agreed to mandatory forum selection clauses.[39] Defendants argue that the five "Franchisee-Plaintiffs" signed franchise agreements which state "[a]ll litigation, court proceedings, lawsuits, arbitration proceedings and other hearings must and will be venued exclusively in Toledo, Ohio."[40] Additionally, Defendants contend that CajunLand Pizza signed an "Area Representative Agreement" ("ARA") which states "any action brought by [CajunLand Pizza] against Franchisor [Marco's Franchising] 'shall be brought within such state and in the judicial district in which Franchisor has its principal place of business.'"[41] Defendants argue that these forum selection clauses are mandatory.[42]

Defendants contend that a defendant may enforce a forum selection clause through the doctrine of *forum non conveniens*, when "the transferee forum is within the federal court system."[43] Defendants argue that while a typical *forum non conveniens* analysis requires the district court to balance factors to determine whether a transfer would promote the interests of

---

[38] Rec. Doc. 13-1 at 6. In the alternative, Defendants argue this matter should be dismissed for lack of subject matter jurisdiction. Rec. Doc. 13 at 1. As discussed above, this Court previously addressed the subject matter jurisdiction arguments in its prior Order and Reasons and is satisfied that complete diversity exists between the parties. Also in the alternative, Defendants argue that this matter should be dismissed because Plaintiffs fail to state a claim for which relief may be granted. *Id.* For the reasons that follow, the Court finds it appropriate to transfer the case and will not reach the arguments regarding failure to state a claim.

[39] *Id.*

[40] *Id.* at 6-7 (citing Rec. Docs. 13-4, 13-5, 13-6, 13-7, 13-8).

[41] *Id.* at 7 (citing Rec. Doc. 13-3 at 39).

[42] *Id.*

[43] *Id.* (citing *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Of Tex.*, 571 U.S. 49, 60 (2013)).

justice, the existence of a mandatory, enforceable forum selection clause ordinarily requires a district court to transfer the matter to the forum specified in the clause, unless there are extraordinary circumstances.[44] Defendants contend that a party suing in contravention of a valid forum selection clause bears the burden of showing why the forum selection clause should not be followed and that the parties' private interests are irrelevant to the analysis.[45]

Defendants next argue that the language of the forum selection clauses signed by Plaintiffs make the clauses mandatory and enforceable.[46] Defendants contend that the forum selection clause is mandatory when it "contains clear language specifying that litigation must occur in the specified forum."[47] Defendants argue that here, the parties used obligatory language and focus on an exclusive venue.[48] Defendants contend that the forum selection clauses at issue do not merely identify Toledo as a proper forum, but rather require that any action be brought there.[49] Defendants argue that the use of obligatory terms such as "any" and "all" and "must" and "shall" make a forum selection mandatory and enforceable.[50]

Defendants further argue that none of the public-interest factors considered under 28 U.S.C. § 1404(a) and *forum non conveniens* weigh against enforcement of the forum selection clauses.[51]

---

[44] *Id*. at 7-8.

[45] *Id*. at 8.

[46] *Id*.

[47] *Id*. (citing *Al Copeland Inv., LLC v. First Specialty Ins. Corp.*, No. CV 16-16346, 2017 WL 2831689, at *6 (E.D. La. June 29, 2017), aff'd, 884 F.3d 540 (5th Cir. 2018)).

[48] *Id*. at 8-9.

[49] *Id*. at 9.

[50] *Id*. at 9-10 (citing *Summit Packaging Sys., Inc. v. Kenyon & Kenyon*, 273 F.3d 9, 12 (1st Cir. 2001); *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 87 (S.D.N.Y. 2012)).

[51] *Id*. at 12.

Defendants contend that the public-interest factors to be considered include "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."[52] However, Defendants argue that these public-interest factors would only outweigh a valid forum clause in extraordinary cases.[53] Defendants contend that Plaintiffs cannot meet the high burden needed to overcome the enforcement of a valid forum selection clause.[54] Defendants argue that the Eastern District of Louisiana is statistically more congested than the Northern District of Ohio.[55] Defendants further contend that this dispute is just as local to Ohio, where Marco's Franchising is located, as it is to Louisiana.[56] Accordingly, Defendants move the Court to transfer this matter to the Northern District of Ohio.[57]

## B.    Plaintiff's Arguments in Opposition to the Motion

In opposition to the motion, Plaintiffs argue that the forum selection clauses are not valid and enforceable as to Plaintiffs' claims.[58] Plaintiffs contend that for a forum selection clause to be enforceable, its terms must apply to the claims and parties at issue in the case.[59] Plaintiffs argue

---

[52] *Id*. (citing *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016) (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 260 n.6 (1981)).

[53] *Id*. at 12 (citing *Weber*, 811 F.3d at 776 (citing *Atl. Marine*, 571 U.S. at 64)).

[54] *Id*. at 12-13.

[55] *Id*.

[56] *Id*.

[57] *Id*.

[58] Rec. Doc. 22 at 3.

[59] *Id*. at 3 (citing *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86,

that the phrase "arise in connection with" cannot include every claim with some connection to a contract.[60] Plaintiffs contend that if a right is asserted outside the contract, that claims should not be governed by the forum selection clause.[61] Plaintiffs argue that in *Alvater Gessler-J.A. Baczewski Int'l (USA), Inc. v. Sobieski Destylarnia, S. A.*,[62] the Second Circuit held that a forum selection clause in a contact did not apply because the plaintiff's claims were not based on rights originating in the contract.[63] Plaintiffs contend that here, their claims are not tied to the franchise agreements and that therefore, the claims should not be governed by the forum selection clauses.[64] Plaintiffs argue that the basis of their claims is Marco's Franchising's actions after their initial approval of the sale.[65] Plaintiffs contend that the Complaint concerns a contract to which Marco's Franchising is not a party and that this lawsuit is not about franchise terms.[66] Plaintiffs further argue that they do not rely on the rights and duties of the contract to assert their claims.[67] Rather, Plaintiffs contend that this lawsuit is about Marco's Franchising's interference in a contract between Plaintiffs and a third party.[68]

Plaintiffs next argue that even if the Court finds that the forum selection clause is valid, the Court should still deny the motion to transfer because there are exceptional public-interest factors

---

90-91 (2d Cir. 2009)).

[60] *Id*. at 4 (citing *Phillips v. Audio Acitve, Ltd.*, 494 F.3d 378, 387 (2nd Cir. 2007)).

[61] *Id*.

[62] 572 F.3d 86 (2nd Cir. 2009).

[63] Rec. Doc. 22 at 4.

[64] *Id*.

[65] *Id*.

[66] *Id*.

[67] *Id*. at 5-6.

[68] *Id*. at 7.

at stake.[69] Plaintiffs contend that the public interest factors include "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."[70] Plaintiffs argue that in analyzing the local interest factor, courts consider the factual connection between facts and the two proposed venues.[71] Here, Plaintiffs contend that New Orleans is renowned as a preeminent food destination because the economy and culture is based on food, unlike the proposed forum.[72] Furthermore, Plaintiffs argue that the areas, franchises and stores at issue are located in New Orleans.[73] Lastly, Plaintiffs contend that the Eastern District of Louisiana has familiarity with the law that will apply in this case.[74]

## C.     *Defendant's Arguments in Further Support of the Motion*

In reply, Defendants argue that Plaintiffs' claims are about the sale of their franchises, sales which required Marco's Franchising's approval pursuant to the franchise agreements; therefore, those claims are within the scope of the forum selection clauses.[75] Defendants also argue that "Plaintiffs apparently concede that the broad forum selection clauses here are 'mandatory.'"[76]

---

[69] *Id.*

[70] *Id.* (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 260 n.6 (1981)).

[71] *Id.* at 8 (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317-18 (5th Cir. 2008)).

[72] *Id.* at 8-9.

[73] *Id.* at 9.

[74] *Id.*

[75] Rec. Doc. 28 at 1.

[76] *Id.*

Next, Defendants contend that Plaintiffs' arguments about the scope of the forum selection clauses is incorrect and contrary to Fifth Circuit precedent.[77] For example, Defendants argue that the language in the forum selection clause in *Phillips* is narrower than the forum selection clause here and that the Fifth Circuit has never adopted the reasoning of *Phillips*.[78] Conversely, Defendants contend that in the Fifth Circuit, a forum selection clause covering all claims "arising in connection with" a contract applies to tort and statutory claims.[79] Defendants argue that "any alleged LUTPA violation or tortious interference rests on Marco's [Franchising's] decision not to approve (or to withdraw approval) of Plaintiffs' planned sale of their franchise rights."[80] Defendants contend that because approval of the sale is required under the franchise agreements, Plaintiffs' alleged damages are rooted in the franchise agreement.[81] Defendants argue that the Fifth Circuit has held that there is no reason for a distinction between contract and tort claims in considering the scope of a forum selection clause because a contrary holding would allow litigants to avoid a forum selection clause with artful pleading.[82] In sum, Defendants contend that "[t]o establish their claims, Plaintiffs will have to show they had rights under the franchise agreements that Marco's infringed by disapproving the proposed sale, a decision expressly reserved to Marco's discretion in the agreements . . . It is impossible to separate Plaintiffs' rights under the

---

[77] *Id.* at 1-2.

[78] *Id.* at 2-3.

[79] *Id.* at 3.

[80] *Id.* at 4.

[81] *Id.*

[82] *Id.* at 5 (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444-45 (5th Cir. 2008)).

franchise agreements from the rights they purport to assert in this action."[83]

Next, Defendants argue that there are no public policy concerns that would override the forum selection clauses.[84] In response to Plaintiffs' argument that the local interest factors weighs in favor of this forum because New Orleans is renowned as a preeminent food destination, "Defendants stipulate that New Orleans deservedly is recognized as a culinary mecca; respectfully, however, pizza is not what sets the Crescent City apart as a foodie paradise."[85] Defendants argue that a dispute involving pizza franchises does not make this an extraordinary case such that the Court should refuse enforcement of the forum selection clause.[86]

### III. Legal Standard

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[87] Section 1004(a) is "a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."[88]

Usually, a court applying the doctrine of *forum non conveniens* must determine whether there is an adequate alternative forum and, if so, determine which forum is best-suited to the

---

[83] *Id*. at 6.

[84] *Id*.

[85] *Id*.

[86] *Id*. at 7.

[87] 28 U.S.C. § 1404(a).

[88] *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Of Tex.*, 571 U.S. 49, 60 (2013) (internal citations omitted).

litigation by considering "a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum."[89] "The private-interest factors include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'"[90] "The public-interest factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'"[91] A plaintiff's choice of forum is typically given some significant, but not determinative, weight.[92]

However, the existence of a mandatory, valid forum selection clause simplifies the analysis in two ways: (1) the "'the plaintiff's choice of forum merits no weight' because, by contracting for a specific forum, 'the plaintiff has effectively exercised its 'venue privilege' before a dispute arises;'"[93] and (2) the "private-interest factors 'weigh entirely in favor of the preselected forum,' so that the 'district court may consider arguments about public-interest factors only.'"[94] Thus, "a valid forum-selection clause controls the *forum non conveniens* inquiry '[i]n

---

[89] *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (citing *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794–95 (5th Cir. 2007)).

[90] *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766-67 (5th Cir. 2016) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

[91] *Id*. at 767 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).

[92] *Id*. (citing *Atl. Marine*, 571 U.S. at 62 n.6).

[93] *Barnett*, 831 F.3d at 300 (quoting *Atl. Marine*, 571 U.S. at 63).

[94] *Id*. (quoting *Atl. Marine*, 571 U.S. at 63).

13

all but the most unusual cases.'"[95] The Fifth Circuit has held that this "harmonizes" with the Supreme Court's "guidance that contractually selected forums often 'figure[] centrally in the parties' negotiations' and become part of those parties' 'settled expectations'—so if a plaintiff disregards such a contractual commitment, 'dismissal . . . work[s] no injustice.'"[96]

In analyzing a forum selection clause, a court must first determine whether the forum selection clause is mandatory or permissive.[97] Once a court makes this determination, it must decide whether the forum selection clause at issue applies to this specific case, which involves two separate inquiries: (1) whether the forum selection clause is valid and enforceable and (2) whether the present case falls within the scope of the forum selection clause.[98]

## IV. Analysis

### A. *What Substantive Law to Apply*

The Court must first determine what substantive law to apply to each element of the forum selection clause analysis. Defendants argue that Ohio law should govern the interpretation of the ARA and the franchise agreements.[99] Plaintiffs do not respond to this argument or dispute that Ohio law should govern the interpretation of the contracts at issue.[100] Both the ARA and the franchise agreements expressly provide that they should be interpreted and governed using Ohio

---

[95] *Id.* (quoting *Atl. Marine*, 571 U.S. at 63).

[96] *Id.*

[97] *Weber*, 811 F.3d at 770-71 (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384–86 (2d Cir. 2007)).

[98] *Id*. at 770.

[99] *See* Rec. Doc. 13-1 at 10–11 ("The Sixth Circuit, applying Ohio law, which governs the franchise agreements and the ARA here, held mandatory and enforceable a forum selection clause stating: 'Place of jurisdiction for all disputes arising in connection with the contract shall be at the principal place of business of the supplier.'").

[100] *See* Rec. Doc. 22 at 9–10 ("Defendants incorrectly argue that the law of Ohio will govern in this matter. However, Plaintiffs have not alleged contract law which would apply. Plaintiffs have alleged claims under LUTPA, a Louisiana statutory scheme, and tortious interference of a contract.").

14

Law. The ARA states:

> "This Agreement takes effect upon its acceptance and execution by Franchisor, and shall be interpreted and construed exclusively under the laws of the State of Ohio which laws shall prevail in the event of any conflict of law (without regard to, and without giving effect to, the application of Ohio choice-of-law rules); provided, however, that if the covenants in Section 14 of this Agreement would not be enforceable under the laws of Ohio and the Store is located outside of Ohio, then such covenants shall be interpreted and construed under the laws of the state in which the Store is located. Nothing in this Section 22.1 is intended by the parties to subject this Agreement to any franchise or similar law, rule, or regulation of the State of Ohio to which this Agreement would not otherwise be subject."[101]

The franchise agreements state: "Except to the extent governed by the United States Trademark Act of 1946 (Lanham Act; 15 U.S.C. § 1051 et seq.), this Agreement and the relationship between Franchisor, you and any Franchisee Owner will be exclusively governed by the laws of the State of Ohio (without regard to, and without giving effect to, the application of Ohio choice-of-law rules)."[102]

In diversity cases, federal law applies when determining whether a forum selection clause is enforceable.[103] However, the Fifth Circuit has determined that to interpret the meaning and scope of a forum selection clause, a court must use the forum's choice-of-law rules to determine what substantive law governs.[104] The Fifth Circuit has recognized that it has not "hewn closely to this principle [of conducting a choice-of-law analysis] in interpreting [the meaning and scope

---

[101] Rec. Doc. 13-3 at 41.

[102] *See* Rec. Docs. 13-4, 13-5, 13-6, 13-7, 13-8.

[103] *Barnett*, 831 F.3d at 301 (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997)) (holding that "even in diversity cases, federal law governs the 'enforceability' of forum-selection clauses in this circuit.").

[104] *Weber*, 811 F.3d at 770-71 ("A "choice-of-law analysis to determine what substantive law should guide this court's interpretation of the [forum selection clause] is proper under ordinary principles governing diversity litigation."); *Barnett*, 831 F.3d at 301 ("When the 'interpretation' of a forum-selection clause is at issue in a diversity case, however, we apply the forum state's choice-of-law rules to determine what substantive law governs.").

forum selection clauses].”[105] Instead, the majority of courts, including the Fifth Circuit, have "interpreted [forum selection clauses] according to general common-law contract principles without addressing the precise source of law."[106] The "use of this general-law approach may be because, in this circuit and others, the *enforceability* of [a forum selection clause] is governed by federal law."[107] However, this approach is incorrect because, as the Fifth Circuit has recognized, "there is no federal common law of contracts."[108] Therefore, this Court will honor its "core obligation . . . to ascertain which body of substantive law to apply by implementing the choice-of-law rules of its home jurisdiction."[109]

Here, Ohio law applies to the meaning and scope of the forum selection clauses. This being the Eastern District of Louisiana, the Court applies Louisiana's conflict-of-law provisions. Louisiana law "generally gives contracting parties the freedom to choose which state's law will govern disputes arising out of the contract."[110] Pursuant to Article 3540 of the Louisiana Civil Code, contractual choice-of-law provisions are presumed valid unless the "chosen" law contravenes the public policy of the state whose law would apply absent the choice-of-law provision.[111] The Fifth Circuit has explained, "[o]ne state's law does not violate another state's

---

[105] *Id.* at 770.

[106] *Id.*

[107] *Id.*

[108] *Barnett*, 831 F.3d at 302 (quoting *Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 258 (6th Cir.1994)).

[109] *Weber*, 811 F.3d at 770-71; *Barnett*, 831 F.3d at 301 ("When the 'interpretation' of a forum-selection clause is at issue in a diversity case, however, we apply the forum state's choice-of-law rules to determine what substantive law governs.").

[110] *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994).

[111] La. Civ. Code art. 3540 ("[A]ll other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537."); *see also Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 938-43 (5th Cir. 2000).

public policy merely because the laws of the two states differ."[112] Furthermore, the Fifth Circuit has specifically highlighted the official comments to Article 3540, which state "only strongly held beliefs of a particular state qualify for the characterization of 'public policy.'"[113] As noted, both the ARA and the franchise agreements expressly provide that they should be interpreted using Ohio Law.[114] In Louisiana, "[i]t is well established that where parties to a contract stipulate the specific state law that will govern the contract, the choice-of-law provision must be given effect unless there is statutory or jurisprudential law to the contrary."[115] Here, Louisiana's choice-of-law rules dictate that Ohio substantive law applies to interpret the meaning and scope of the contracts and forum selection clauses in this case.

**B.** *Whether the Forum Selection Clauses are Mandatory or Permissive*

Next, the Court must determine whether the forum selection clauses are mandatory or permissive. As an initial matter, the Court notes that the parties do not appear to dispute that the forum selection clauses in both the ARA and the franchise agreements are mandatory.[116]

Under Ohio law, "[a] permissive clause authorizes jurisdiction in a designated forum, but does not prohibit litigation elsewhere, whereas a mandatory clause dictates an exclusive forum for litigation under the agreement."[117] "A forum selection clause is mandatory when it specifies

---

[112] *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1058 (5th Cir. 1982).

[113] *Cherokee Pump & Equip. Inc.*, 38 F.3d at 252 (quoting La. Civ. Code art. 3540 cmt. f).

[114] *See* Rec. Docs. 13-3 at 41, 13-4, 13-5, 13-6, 13-7, 13-8.

[115] *NorAm Drilling Co. v. E & PCo Intern., LLC*, 131 So.3d 926, 929 (La. App. 2 Cir. 2013).

[116] *See* Rec. Doc. 22. Plaintiffs do not brief the issue of whether the forum selection clauses are mandatory or permissive. Defendants argue that "Plaintiffs apparently concede that the broad forum selection clauses here are 'mandatory.'" Rec. Doc. 28 at 1.

[117] *State ex rel. Cordray v. Makedonija Tabak 2000*, 189 Ohio App.3d 73, 2010-Ohio-2903, 937 N.E.2d 595, at ¶ 15 (citing *Emerald Grande, Inc. v. Junkin*, 334 Fed. Appx. 973, 975-76 (11th Cir. 2009)).

that litigation will be brought within a designated forum and reflects the parties' intent that jurisdiction in that forum is exclusive . . . For example, when a forum selection clause does not refer specifically to venue and contains no language indicating that the referenced forum is exclusive, it is permissive with respect to jurisdiction . . . A forum selection clause that authorizes jurisdiction in one forum but does not prohibit jurisdiction elsewhere is not mandatory . . . Similarly, when the words 'may' or 'should' are used, it signifies the parties' intent that a forum selection clause is permissive."[118] In determining whether a forum selection clause is mandatory or permissive, Ohio courts have considered the following factors: "(1) reference to venue; (2) language indicating the parties' intent to make jurisdiction exclusive; and (3) language indicating a suit elsewhere is forbidden."[119] A court need not find each of the three factors is satisfied in order to find that a forum selection clause is mandatory; in fact, language clearly indicating exclusivity may be enough to support a finding of mandatory.[120]

For example, the Court of Appeals of Ohio for the Ninth Appellate District determined that a forum selection clause, which provided that "[a]ny proceeding arising out of or relating to this Agreement shall be brought in the courts of the State of Delaware, or, if it has or can acquire jurisdiction, in the United States District Court in Delaware," was mandatory.[121] The court reasoned that "[t]he language of this clause unambiguously reflects the parties' intent that the Courts of Delaware will be the exclusive forum for disputes arising from the agreement: it

---

[118] *Huber v. Inpatient Medical Services, Inc.*, 2018-Ohio-4686, 124 N.E.3d 382, at ¶ 14 (internal citations omitted).

[119] *Keehan Tennessee Invest., L.L.C. v. Praetorium Secured Fund I, L.P.*, 2016-Ohio-8390, 71 N.E.3d 325, 332, at ¶ 25.

[120] *Id*. at ¶ 26.

[121] *Huber v. Inpatient Medical Services, Inc.*, 2018-Ohio-4686, 124 N.E.3d 382, at ¶ 15.

addresses both choice of law and venue and provides that '[a]ny proceeding' related to or arising

from the agreement 'shall be brought' in Delaware."[122] Additionally, the Court of Appeals of

Ohio for the Second Appellate District held that a forum selection clause which provided that

"any legal proceeding brought to enforce any provision of this Agreement must be filed in a court

of competent jurisdiction located in Escambia[ ] County, Florida," was mandatory.[123] Conversely,

the Court of Appeals of Ohio for the Ninth Appellate District determined that a forum selection

clause, which provided that "[e]ach of the Parties hereby irrevocably and unconditionally submits

to the non-exclusive jurisdiction of any New York State court or Federal court of the United States

of America sitting in New York City. . ." was permissive rather than mandatory.[124]

Here, there are two forum selection clauses at issue. The Court will analyze each forum

selection individually to determine whether it is mandatory or permissive.

The first forum selection clause is in the Area Representative Agreement ("ARA"), between

Marco's Franchising and CajunLand Pizza.[125] The ARA states that "[t]he parties agree that any

---

[122] *Id.*

[123] *Dayton Outpatient Ctr., Inc. v. OMRI of Pensacola, Inc.*, 2014-Ohio-4105, 19 N.E.3d 608.

[124] *EI UK Holdings, Inc. v. Cinergy UK, Inc.*, 9th Dist. Summit No. 22326, 2005-Ohio-1271, 2005 WL 662921, ¶ 4. The complete forum selection clause reads:

(a) Each of the Parties hereby irrevocably and unconditionally submits to the non-exclusive jurisdiction of any New York State court or Federal court of the United States of America sitting in New York City, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or for the recognition or enforcement of any judgment, and hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court. Each Party agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other matter provided by law.

(b) Each of the Parties hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or thereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any New York State or Federal court. Each Party hereby irrevocably waives, to the fullest extent permitted by law, the defense of any inconvenient forum to the maintenance of such action or proceeding in any such court.

[125] Rec. Doc. 13-3.

action brought by Area Representative [CajunLand Pizza] against Franchisor [Marco's Franchising] in any court, whether federal or state, shall be brought within such state and in the judicial district in which Franchisor has its principal place of business."[126]

Having considered the forum selection clause in the ARA in the context of Ohio law, the Court finds it is mandatory. The plain language of the forum selection clause reflects the contracting parties' intent to choose a particular forum, namely a court "within such state and in the judicial district in which Franchisor has its principal place of business," to the exclusion of any other court by stating that any proceeding "shall be brought" there. By using the words, "shall be brought," the subject clause is mandatory. The Court of Appeals of Ohio for the Ninth Appellate District previously determined that a nearly identical forum selection clause, providing that "[a]ny proceeding arising out of or relating to this Agreement shall be brought in the courts of the State of Delaware, or, if it has or can acquire jurisdiction, in the United States District Court in Delaware," is mandatory.[127] Similarly, a forum selection clause providing that "[t]he parties agree that any action brought by Area Representative [CajunLand Pizza] against Franchisor [Marco's Franchising] in any court, whether federal or state, shall be brought within such state and in the judicial district in which Franchisor has its principal place of business" is also mandatory under Ohio law.[128]

The second forum selection clause, was signed by the remaining five Plaintiffs—Ole Tyme Pizza, Crescent City Pizza, Partners Pizza, SELA No. 1, and SELA No. 2 (collectively, the

---

[126] *Id*. at 41.

[127] *Huber v. Inpatient Medical Services, Inc.*, 2018-Ohio-4686, 124 N.E.3d 382, at ¶ 15.

[128] Rec. Doc. 13-3 at 41.

"Franchisee-Plaintiffs") in separate franchise agreements.[129] Each franchise agreement contains

the following forum selection clause under the header "Jurisdiction and Venue."[130]

> All litigation, court proceedings, lawsuits, arbitration proceedings and other hearings must and will be venued exclusively in Toledo, Ohio. You and each Franchisee Owner do hereby agree and submit to personal jurisdiction in Lucas County, Ohio or the Federal District Court having jurisdiction therein for the purposes of any suit, proceeding, arbitration or hearing permitted to be brought to enforce or construe the terms of this Agreement or to resolve any dispute or controversy arising in connection with this Agreement. You and each Franchisee Owner waive any rights to contest such venue and jurisdiction and any claims that such venue and jurisdiction are invalid.[131]

The Court has no trouble concluding that the forum selection clauses contained in the

franchise agreements are also mandatory. This clause clearly, "specifies that litigation will be

brought within a designated forum and reflects the parties' intent that jurisdiction in that forum

is exclusive."[132] The phrase "must and will be venued exclusively" demonstrates the parties'

intent to bind themselves to the particular forum of Toledo, Ohio. That phrase is without question

a phrase of exclusivity. The language in the forum selection clause in the franchise agreements

does not merely authorize jurisdiction in Toledo, Ohio, but provides that jurisdiction is only

appropriate in Toledo, Ohio. The clause specifically references venue, contains words of

exclusivity, and prohibits suit in other courts; accordingly, this clause is unambiguously

mandatory.

## C.   *Whether the Forum Selection Clause is Valid and Enforceable*

Having determined that each forum selection clause is mandatory rather than permissive,

---

[129] *See* Rec. Docs. 13-4, 13-5, 13-6, 13-7, 13-8.

[130] *See* Rec. Docs. 13-4, 13-5, 13-6, 13-7, 13-8.

[131] *See* Rec. Docs. 13-4, 13-5, 13-6, 13-7, 13-8.

[132] *Huber v. Inpatient Medical Services, Inc.*, 2018-Ohio-4686, 124 N.E.3d 382, at ¶ 14.

the Court must next determine whether the forum selection clauses in the franchise agreements are valid and enforceable. In diversity cases, federal law applies when determining whether a forum selection clause is valid and enforceable.[133] Under federal law, a "forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable."[134]

The party resisting enforcement on "unreasonable" grounds bears a "heavy burden of proof."[135] The Fifth Circuit has articulated a four-factor test, by which unreasonableness "potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state."[136]

Here, Plaintiffs do not satisfy the "heavy burden of proof" to show that enforcement of the forum selection clause in the franchise agreements would be "unreasonable." First, while Plaintiffs argue that their "complaint is rife with allegations of fraud, deceit and misrepresentation" they do not specifically contend that the forum selection clauses were incorporated into the franchise agreements or the ARA via fraudulent conduct.[137] "Fraud and

---

[133] *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997) (citation omitted).

[134] *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995). The Fifth Circuit has not drawn a "distinction between validity and enforceability." *Barnett*, 831 F.3d at 302. Instead, the Fifth Circuit appears "to treat those words as synonyms in the forum-selection clause context." *Id.*

[135] *Haynsworth*, 121 F.3d at 963 (citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972)).

[136] *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

[137] Rec. Doc. 22 at 13.

overreaching must be specific to a forum selection clause in order to invalidate it."[138] Second, Plaintiffs do not contend that they will lose their day in court by litigating in the Northern District of Ohio.[139] Third, Plaintiffs do not contend that the chosen law will deprive them of a remedy.[140] Fourth and finally, Plaintiffs do not argue that enforcement of the forum selection clause contravenes a "strong public policy" of the forum state.[141] Accordingly, because Plaintiffs do not satisfy their "heavy" burden of showing that enforcement of the forum selection clause would be unreasonable, the Court finds that the clause is valid and enforceable.

## D.    *Whether the Forum Selection Clauses Apply to Plaintiff's Counts*

The Court must now determine whether the forum selection clause applies to Plaintiffs' two claims against Defendants. As discussed above, Ohio substantive law applies to interpret the meaning and scope of the contracts and forum selection clauses in this case.

Plaintiffs contend that their claims are not tied to the franchise agreement and that therefore, the claims should not be governed by the forum selection clause.[142] Plaintiffs argue that the basis of their claims is Marco's Franchising's actions after its initial approval of the sale.[143] Plaintiffs contend that the Complaint concerns a contract to which Marco's Franchising is not a party and that this lawsuit is not about franchise terms.[144] In response, Defendants contend that "[t]o establish their claims, Plaintiffs will have to show they had rights under the franchise agreements

---

[138] *Haynsworth*, 121 F.3d at 963.

[139] *See* Rec. Doc. 22.

[140] *See id.*

[141] *See id.*

[142] *Id.* at 5.

[143] *Id.*

[144] *Id.*

that Marco's infringed by disapproving the proposed sale, a decision expressly reserved to Marco's discretion in the agreements . . . It is impossible to separate Plaintiffs' rights under the franchise agreements from the rights they purport to assert in this action."[145]

Generally, Ohio courts have called for a broad reading of forum selection clauses. "'If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims.' Therefore, 'even where a forum selection clause does not explicitly govern a given cause of action, courts will inquire into whether the other claims are sufficiently related to the claim that is specifically covered by the clause.'"[146]

Perhaps the most instructive analysis of scope of a forum selection clause from the Ohio courts comes from *Bohl v. Hauke*.[147] There, the plaintiffs contracted with Doug Hauke ("Hauke"), who agreed to provide materials for and to construct a dairy barn on the Bohls' property.[148] Hauke in turn purchased materials for the barn from ABC, a Texas corporation, which gave Hauke a 20–year limited written warranty for the materials.[149] The warranty contained a forum selection clause providing that "[t]he laws of the State of Texas shall govern the rights and duties of the parties under this agreement and jurisdiction and venue is fixed in Harris County, Texas."[150] After the plaintiffs discovered problems with the barn, they filed suit against Hauke and ABC.[151]

---

[145] Rec. Doc. 28 at 6.

[146] *Bohl v. Hauke*, 180 Ohio App.3d 526, 2009-Ohio-150, 906 N.E.2d 450, ¶ 26 (quoting *Travelers Prop. Cas. Co. of America v. Centimark Corp.*, No. 2:04–cv–916, 2005 WL 1038842 at *2 (S.D. Ohio May 3, 2005)).

[147] *Id.*

[148] *Id.* at ¶ 2.

[149] *Id.* at ¶ 3.

[150] *Id.*

[151] *Id.* at ¶ 6.

Specifically against ABC, the plaintiffs asserted three claims: (1) a tort claim based on ABC's alleged breach of a duty; (2) a claim that ABC breached express and implied warranties; and (3) a claim that ABC breached an obligation of 'good faith and fair dealing.'[152] The court held that "[t]he forum-selection clause in the warranty covers the performance of the" materials ABC sold to Hauke.[153] Specifically, the court determined that because enforcement of the warranty provisions would eliminate the plaintiffs' claims, those claims must be related to the written warranty claim such that the forum selection clause applies to them.[154]

The Fifth Circuit has adopted a similar approach to determine the scope of forum selection clauses. In the Fifth Circuit, to decide whether the forum selection clause in the franchise agreements applies to each claim, the Court "must look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses."[155] The scope of a forum selection clause is not limited to claims for breach of the contract that contains the forum selection clause.[156] Indeed, forum selection clauses extending "to all disputes that 'relate to' or 'are connected with' the contract are construed broadly."[157]

In this case Plaintiffs assert a cause of action under the Louisiana Unfair Trade Practices

---

[152] *Id*. at ¶ 27.

[153] *Id*. at ¶ 28.

[154] *Id*.

[155] *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998); *see also Claimserviceprovider, Inc. v. St. Paul Travelers Companies Inc.*, No. 06-2475, 2006 WL 2989240, at *4 (E.D. La. Oct. 18, 2006).

[156] *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 445 (5th Cir. 2008).

[157] *Pinnacle Interior Elements, Ltd. v. Panalpina*, No. 3:09–CV–0430–G, 2010 WL 445927, at *5 (N.D. Tex. Feb. 9, 2010) (quoting *Pennzoil Exploration and Production Company v. Ramco Energy Limited*, 139 F.3d 1061, 1067 (5th Cir. 1998)).

Act ("LUTPA") as well as a cause of action for tortious interference of a contract.[158] With regard

to the first claim, Plaintiffs allege that Marco's Franchising violated LUTPA by orally retracting

the initial written approval for the sale of the Plaintiff franchises, by interfering with Plaintiffs'

contract with a purchaser and by forcing stores to shut down.[159] With regard to the second claim,

Plaintiffs allege that Libardi's actions, namely interfering with the contract for the Plaintiff

franchises, constitute a tortious and intentional interference with Plaintiffs' business.[160]

The Court must review the language of the forum selection clauses in the ARA and the

franchise agreements to determine whether Plaintiff's claims fall within the clause's scope. The

ARA states that "[t]he parties agree that any action brought by Area Representative [CajunLand]

against Franchisor [Marco's Franchising] in any court, whether federal or state, shall be brought

within such state and in the judicial district in which Franchisor has its principal place of

business."[161] Each franchise agreement contains the following forum selection clause under the

header "Jurisdiction and Venue."[162]

> All litigation, court proceedings, lawsuits, arbitration proceedings and other
> hearings must and will be venued exclusively in Toledo, Ohio. You and each
> Franchisee Owner do hereby agree and submit to personal jurisdiction in Lucas
> County, Ohio or the Federal District Court having jurisdiction therein for the
> purposes of any suit, proceeding, arbitration or hearing permitted to be brought to
> enforce or construe the terms of this Agreement or to resolve any dispute or
> controversy arising in connection with this Agreement. You and each Franchisee
> Owner waive any rights to contest such venue and jurisdiction and any claims that
> such venue and jurisdiction are invalid.[163]

---

[158] Rec. Doc. 1 at 23-28.

[159] *Id*. at 23-25.

[160] *Id*. at 25-27.

[161] Rec. Doc. 13-3 at 41.

[162] *See* Rec. Docs. 13-4, 13-5, 13-6, 13-7, 13-8.

[163] *See* Rec. Docs. 13-4, 13-5, 13-6, 13-7, 13-8.

The forum selection clauses in the ARA and franchise agreements are broadly worded and will therefore cover a wide variety of claims. The clause in the ARA applies to "any action" by CajunLand against Marco's Franchising.[164] The clause in the franchise agreements applies to "any dispute or controversy arising in connection with" the franchise agreement.[165] As such, if the dispute arises in connection with the contract, the dispute is within the scope of the forum selection clause. Plaintiffs have pled two causes of action that clearly arise in connection with the franchise agreements. Plaintiffs are alleging that the Defendants improperly interfered with the sale of their franchises. It is undisputed that pursuant to the franchise agreements, Plaintiffs must obtain the approval of Marco's Franchising before they may sell their franchises. Therefore, to succeed on their claims that Marco's Franchising impermissibly impeded on their right to sell their franchises, Plaintiffs will have to show that Marco's Franchising infringed on their rights under the franchise agreements. All of Plaintiffs' claims arise out of Marco's Franchising's actions regarding the sale of Plaintiffs' franchises, which comes within the scope of the forum selection clause's "arising in connection with" provision. Therefore, the forum selection clauses here encompass Plaintiffs' claims.

Plaintiffs argue that the basis of their claims is about Marco's Franchising's conduct after the initial approval of the sale – that the franchise agreements only covered this initial approval, and once approved, any subsequent conduct is outside the scope of the franchise agreements. Despite this artful pleading, the Court finds that the claims are sufficiently related to the franchise agreements and are therefore subject to the forum selection clause. Plaintiffs' causes of action are directly related to their rights under the franchise agreements.

---

[164] Rec. Doc. 13-3 at 41.

[165] *See* Rec. Docs. 13-4, 13-5, 13-6, 13-7, 13-8.

For the reasons stated above, the Court finds that the franchise agreements and the ARA each contain a mandatory, valid and enforceable forum selection clause. Furthermore, the Court finds that the scope of the forum selection clauses in the franchise agreements relates to the causes of action Plaintiffs have affirmatively pled.

## E.   Whether to Transfer Venue

The existence of a mandatory, valid forum selection clause simplifies the analysis in two ways: (1) the "'the plaintiff's choice of forum merits no weight' because, by contracting for a specific forum, 'the plaintiff has effectively exercised its 'venue privilege' before a dispute arises;'"[166] and (2) the "private-interest factors 'weigh entirely in favor of the preselected forum,' so that the 'district court may consider arguments about public-interest factors only.'"[167] Thus, "a valid forum-selection clause controls the *forum non conveniens* inquiry '[i]n all but the most unusual cases.'"[168] The Fifth Circuit has held that this "harmonizes" with the Supreme Court's "guidance that contractually selected forums often 'figure[] centrally in the parties' negotiations' and become part of those parties' 'settled expectations'—so if a plaintiff disregards such a contractual commitment, 'dismissal . . . work[s] no injustice.'"[169] Accordingly, "the public-interest factors would outweigh a valid forum clause only in truly extraordinary cases. . ."[170]

The Fifth Circuit has instructed that the public-interest factors to be considered under a *forum non conveniens* analysis include "'administrative difficulties flowing from court

---

[166]*Barnett*, 831 F.3d at 300 (quoting *Atl. Marine*, 571 U.S. at 63).

[167] *Id*. (quoting *Atl. Marine*, 571 U.S. at 65).

[168] *Id.* (quoting *Atl. Marine*, 571 U.S. at 65).

[169] *Id.*

[170] *Weber*, 811 F.3d at 776 (citing Atl. Marine, 571 U.S. at 64).

congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.'"[171] Plaintiffs only address two factors: the local interest in having localized interests decided at home and the familiarity of this forum with the law that will apply and govern the case.[172]

First, there is no indication that the Northern District of Ohio is any more congested than the Eastern District of Louisiana. In fact, total actions per judgeship as well as weighted filings in the Eastern District of Louisiana exceed those of the Northern District of Ohio by a ratio of nearly three-to-one.[173] Accordingly, the administrative difficulties flowing from court congestion favor transfer.

The second factor, the local interest in having localized controversies decided at home, is not sufficient to overcome the "extraordinary circumstances" bar. In analyzing this factor, courts often look to the factual connection between the events at issue and the two possible venues.[174] Plaintiffs contend that because New Orleans is renowned as a preeminent culinary destination and because this case involves restaurants located in New Orleans, the case should not be transferred to another district.[175] In reply, "Defendants stipulate that New Orleans deservedly is recognized as a culinary mecca," but argue that a dispute involving pizza franchises does not

---

[171] *Weber*, 811 F.3d at 776 (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 260 n.6 (1981)).

[172] Rec. Doc. 22 at 8-10.

[173] The Court takes judicial notice of statistics published on the official United States Courts website.

[174] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317-18 (5th Cir. 2008).

[175] Rec. Doc. 22 at 8-9.

make this an extraordinary case such that the Court should refuse enforcement of the forum selection clause.[176]

While the Court of course recognizes that New Orleans has a unique and special culture around food, this is not the type of local interest sufficient to overcome a valid, mandatory forum selection clause. "Sufficient localized interests are more likely to involve issues exceptional, or unique, to the local venue; examples may include specific water and oil rights, or a case involving a company that maintains a significant corporate footprint through high localized employment rates and contributions to the local economy."[177] Furthermore, the issues presented in this case are less about the food in the restaurants or the culinary experience of dining there. Rather, the issues are more about the proper interpretation of the franchise agreements, namely whether a party could, consistent with the franchise agreements, withdraw its initial written approval of a sale of stores to another franchisee. Disputes about contract interpretation and tortious interference with a contract are not localized interests unique to the New Orleans area. Lastly, while Plaintiffs' franchises and stores are in Louisiana, Defendants Marco's Franchising is headquartered in Ohio.[178] Therefore, while this factor may weigh against transfer, it is not sufficient to demonstrate an extraordinary circumstance where this public-interest factor would outweigh a valid forum selection clause.

The third and fourth factors— the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, and the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law —are neutral as both courts are

---

[176] Rec. Doc. 28 at 7.

[177] *Sabal Ltd. LP v. Deutsche Bank AG*, 209 F. Supp. 3d 907, 925 (W.D. Tex. 2016).

[178] Rec. Doc. 13-1 at 13.

federal district courts familiar with applying state law when sitting diversity. Plaintiffs are bringing Louisiana state law claims. Although the Eastern District of Louisiana is undoubtedly more familiar with Louisiana tort law than the Northern District of Ohio, the Court notes that "federal judges routinely apply the law of a State other than the State in which they sit."[179] Furthermore, Defendants contend that the contracts at issue in this case require that Ohio law govern this dispute. The Northern District of Ohio is likely more familiar with Ohio state law than this Court. Therefore, the law that governs the instant dispute has not yet been determined. As to the fourth factor, neither party argues that transfer would implicate problems involving conflicts of law or the application of a foreign law. Accordingly, the Court considers both the third and fourth factors neutral.

The fifth factor, the unfairness of burdening citizens in an unrelated forum with jury duty, is also neutral. Neither party identified any reason citizens in an unrelated forum would be burdened with jury duty if the case is transferred. However, for completeness, the Court will briefly consider this factor. While Plaintiffs' franchises and stores are in Louisiana, Defendants Marco's Franchising is headquartered in Ohio.[180] Therefore, jury duty in this case does not impart such a burden as to weigh for or against transfer. Accordingly, this factor is neutral.

On balance, the Court finds Plaintiffs have not demonstrated that this is one of the truly extraordinary cases in which application of the public-interest factors overwhelmingly disfavors transfer. Therefore, the forum selection clauses control, and this case must be transferred to the Northern District of Ohio.

---

[179] *Atlantic Marine*, 571 U.S. at 67.

[180] Rec. Doc. 13-1 at 13.

## V. Conclusion

For the reasons explained above, the Court grants Defendant's motion and transfers this case to the Northern District of Ohio. The Court finds that the forum selection clauses in the ARA are mandatory under Ohio law. Furthermore, the Court finds that the forum selection clauses are enforceable. Lastly, the Court finds that the scope of the clauses relates to the causes of action Plaintiffs have affirmatively pled. Because the Court finds that Plaintiffs have not demonstrated that this is one of the extraordinary cases in which application of the public-interest factors overwhelmingly disfavors transfer, the Court must transfer this action to the Northern District of Ohio. Because the Court transfers this action, it does not reach the Defendants' arguments regarding the motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants "Motion to Transfer Actions Under U.S.C. § 1404 or to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief May be Granted"[181] is **GRANTED** and this case is **TRANSFERRED** to the Northern District of Ohio.

**NEW ORLEANS, LOUISIANA,** this  9th   day of March, 2020.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[181] Rec. Doc. 13.